(August 10, 1995)

■ In the Matter of the Claim of SALVATORE MARCERA, Appellant, v DELCO PRODUCTS, DIVISION OF GENERAL MOTORS CORPORATION, Respondent. WORKERS' COMPENSATION BOARD, Respondent. [630 NYS2d 414] —Crew III, J. Appeal from a decision of the Workers' Compensation Board, filed June 16, 1993, which ruled that claimant was not entitled to additional workers' compensation benefits pursuant to Workers' Compensation Law § 15 (3) (v).

Claimant apparently sustained two compensable injuries to his right arm, as a result of which he was found to have a 60% schedule loss of use of that member and was awarded benefits. It appears that claimant thereafter applied for additional compensation benefits pursuant to Workers' Compensation Law § 15 (3) (v).[1] Although such application initially was denied, the Workers' Compensation Board ultimately restored

1. The statute provides, in relevant part, that "additional compensation shall be payable for impairment of wage earning capacity for any period after the termination of an award under paragraphs a, b, c, or d, of this subdivision for the loss or loss of use of [50%] or more of a member, provided such impairment of earning capacity shall be due solely thereto". The cited paragraphs refer to schedule losses for an arm, leg, hand and foot, respectively.

the matter to the trial calendar for additional medical testimony on the issue of whether claimant's disability resulted solely from the injuries to his right arm. At the conclusion of such testimony, the Board concluded that claimant's loss of earning capacity was not due solely to his compensable arm injuries and, therefore, he was not entitled to additional benefits. This appeal by claimant followed.

Based upon our review of the record as a whole, we are of the view that the Board's determination is not supported by substantial evidence and, as such, cannot stand. In this regard, we are well aware that conflicting medical testimony merely presents a factual issue for the Board to resolve (see, *Matter of Ubban v County of Westchester*, 195 AD2d 726, 727). Here, however, it is our view that the record fails to contain any competent medical proof to support the Board's finding that claimant's loss in earning capacity was not due solely to the compensable injuries to his arm.

In reaching its conclusion, the Board relied, in part, upon the testimony offered by Joseph Maggio, a physician specializing in occupational medicine. After testifying as to the extent of the injuries to claimant's arm, Maggio opined that claimant, who had undergone open heart surgery shortly before his retirement from the employer, retained some cardiac disability. When specifically questioned as to whether such cardiac pathology constituted an impairment of claimant's earning capacity, however, Maggio conceded that it would depend upon the type of job claimant was to perform and added, "I believe you should get that opinion from a cardiologist rather than me." In this regard, claimant's cardiologist, Arthur Moss, repeatedly and unequivocally testified that although claimant's coronary disease had progressed since his open heart surgery and claimant continued to be on medication, claimant was not restricted from working due to his cardiac condition. The Board also relied upon a letter authored by William McLane, a rehabilitation counselor employed by the State Education Department's Office of Vocational and Educational Services for Individuals with Disabilities, wherein McLane stated that a combination of factors, including claimant's cardiac condition, precluded claimant's return to the workforce. It does not appear, however, that McLane was a licensed physician or had any particular expertise in evaluating coronary diseases.

Although we can conceive of no rational explanation for the Board's apparent decision to credit, with respect to claimant's cardiac condition, the testimony of a physician specializing in occupational medicine over that of claimant's treating cardiolo-

gist, this is not a case of simply choosing between competing expert medical opinions—a matter which admittedly falls exclusively within the province of the Board. Rather, it is a case of the evidence upon which the Board chose to rely being insufficient to sustain its findings. As noted previously, Maggio readily acknowledged that any opinion regarding the nature and extent of claimant's cardiac condition would best be obtained from a cardiologist, and there is no indication in the record that the rehabilitation counselor was in any way qualified to render an opinion in this regard. In short, the only competent medical proof regarding claimant's cardiac condition came from Moss, his treating cardiologist, and is contrary to the Board's findings. Accordingly, we must conclude that there is insufficient evidence in the record to support the Board's finding that claimant's loss of earning capacity was not due solely to his compensable arm injuries and, as such, the Board's decision must be reversed.[2]

Mikoll, J. P., Mercure and Casey, JJ., concur.

Yesawich Jr., J. (dissenting). I respectfully dissent, and vote to affirm the decision of the Workers' Compensation Board. While I agree that neither William McLane's letter, nor any of the medical testimony presented, provides sufficient basis for a finding that claimant's loss of earning capacity was due to his heart condition rather than to his prior compensable arm injury, I do not read the Board's determination as resting on such a finding. Though it placed particular emphasis on certain portions of the record, the Board did not rely on those aspects alone, but concluded, based on "the record as a whole", that "claimant's loss of wage earning capacity is not solely due to his compensable arm condition". Because I believe that the record supports this conclusion, I would affirm.

It is undisputed that claimant retired pursuant to a "special" plan which provided him with significant monetary benefits. Although he contends that he did so because his arm injury made it impossible for him to perform the tasks to which he was assigned, the Board's rejection of this assertion is not un-

---

2. Contrary to the view expressed by the dissent, the crux of the Board's decision, as evidenced by its specific reference to Maggio's testimony and its recitation of claimant's cardiac problems, rests upon a finding that claimant's loss of wage earning capacity was due to his compensable arm injury *and* his coronary condition. Moreover, to the extent that the dissent suggests that the Board reasonably could conclude that claimant retired either to take advantage of certain financial incentives or because of a change in his job duties, we note that no such rationale is suggested by the Board in its decision, and our scope of review is limited to considering the actual grounds advanced for the Board's determination.

reasonable, given the uncontroverted fact that he first inquired about the retirement program several months before his job duties were changed (apparently as a result of a reorganization) which, when considered in conjunction with claimant's own testimony, supports an inference that he was forced out because of his age and seniority, not because of any disability. Furthermore, as the Board noted, Austin Leve, an orthopedic surgeon, testified that claimant's arm condition did not prevent him from working or carrying out other activities without restriction. Ordered that the decision is reversed, with costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision.