Matter of Ireland v Cattaraugus County Dept. of Nursing Homes-Olean Pines (2020 NY Slip Op 02514)





Matter of Ireland v Cattaraugus County Dept. of Nursing Homes-Olean Pines


2020 NY Slip Op 02514


Decided on April 30, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 30, 2020

528938

[*1]In the Matter of the Claim of Valerie Ireland, Respondent,
v
Cattaraugus County Department of Nursing Homes-Olean Pines et al., Appellants. Workers' Compensation Board, Respondent.

Calendar Date: January 13, 2020

Before: Egan Jr., J.P., Lynch, Devine, Aarons and Reynolds Fitzgerald, JJ.


Hamberger & Weiss LLP, Buffalo (John D. Land of counsel), for appellants.
Lewis & Lewis, PC, Buffalo (Emily F. Janicz of counsel), for Valerie Ireland, respondent.
Letitia James, Attorney General, New York City (Marjorie S. Leff of counsel), for Workers' Compensation Board, respondent.



Lynch, J.
Appeal from a decision of the Workers' Compensation Board, filed October 4, 2018, which denied a request by the employer and its workers' compensation carrier to rehear or reopen claimant's workers' compensation claim.
Claimant was awarded workers' compensation benefits in 2012 after suffering a work-related injury to her back. The claim was later amended to include an injury to claimant's neck. In December 2013, awards were continued at a temporary partial disability rate. In 2015, the employer and its workers' compensation carrier (hereinafter collectively referred to as the employer) raised the issue of claimant's attachment to the labor market. In January 2016, a Workers' Compensation Law Judge (hereinafter WCLJ) determined that claimant was attached to the labor market "as evidenced by a diligent and persistent job search," and the case was continued to address permanency. Prior to a hearing on permanency, the parties stipulated that, among other things, claimant had sustained a 75% permanent partial disability and a 75% loss of wage-earning capacity. The parties also stipulated that claimant would produce a job search sheet every 60 days. The stipulation was approved by the WCLJ and incorporated into a March 17, 2016 decision.
In August 2018, the employer sought to reopen the claim to address claimant's voluntary removal from the labor market, citing no evidence of a job search since June 2017. The Workers' Compensation Board denied the request on the ground that, pursuant to the April 2017 amendment to Workers' Compensation Law § 15 (3) (w), claimant was not required to demonstrate an ongoing attachment to the labor market. The employer appeals.
Workers' Compensation Law § 15 (3) (w) was amended, effective April 10, 2017 (L 2017, ch 59, part NNN, subpart A,
§ 1), to provide, in relevant part, that, in certain cases of permanent partial disability, "[c]ompensation . . . shall be payable during the continuance of such permanent partial disability, without the necessity for the claimant who is entitled to benefits at the time of classification to demonstrate ongoing attachment to the labor market." This Court has previously found that the 2017 amendment applies retroactively "to claimants who have involuntarily withdrawn from the labor market and are entitled to receive wage replacement benefits having been classified with a permanent partial disability" (Matter of O'Donnell v Erie County, 162 AD3d 1278, 1280-1281 [2018], revd on other grounds ___ NY3d ___, 2020 NY Slip Op 02095 [2020]). In addressing the issue of retroactive application, the Court of Appeals, in Matter of O'Donnell v Erie County (___ NY3d ___, 2020 NY Slip Op 02095 [2020]), pointed out that the parties agreed that the amendment applied retroactively to a claimant eligible for benefits when classified with a permanent partial disability, and commented, "[w]e agree [that] this interpretation is correct" (id. at *3). Here, claimant was classified as having a permanent partial disability in the WCLJ's March 2016 decision. At the time of classification, there had not been a finding that claimant had voluntarily withdrawn from the labor market, nor was there any finding of a voluntary withdrawal by the Board prior to the 2017 amendment (compare Matter of Santos v Brickens Constr. Inc., 175 AD3d 1742, 1743 [2019]; Matter of Pryer v Incorporated Vil. of Hempstead, 175 AD3d 1663, 1665-1666 [2019]; Matter of Scott v Visiting Nurses Home Care, 172 AD3d 1868, 1871-1872 [2019], lv dismissed 34 NY3d 1011 [2019]). In light of the foregoing, we find that the 2017 amendment applies retroactively to the claim and obviates the need for claimant to demonstrate an attachment to the labor market (see Matter of O'Donnell v Erie County, 162 AD3d at 1280-1281). Therefore, the Board properly denied the employer's request for a rehearing or reopening of the claim.
Contrary to the employer's contention, the fact that the parties stipulated in 2016 to a requirement that claimant provide proof of a job search every 60 days does not compel a different result. "Parties to any claim before the [B]oard may stipulate to uncontested facts or proposed findings" (12 NYCRR 300.5 [b] [1]), and such a stipulation, if approved by a WCLJ and incorporated into his or her decision, is binding on the parties (see 12 NYCRR 300.5 [b] [1]; Matter of Lloyd v New Era Cap Co., 80 AD3d 1016, 1019 [2011]). Notably, "consistent with the Board's jurisdiction and control over awards of compensation in the state, such a stipulation is subject to further review by the Board and can even be disregarded" (Matter of Lloyd v New Era Cap Co., 80 AD3d at 1019 [internal quotation marks, brackets and citation omitted]; see Matter of Hosler v Smallman, 106 AD3d 1218, 1219 [2013]; Matter of Marino v K.L.M. Royal Dutch Airlines, 194 AD2d 818, 820 [1993], lv denied 82 NY2d 661 [1993]; see also Workers' Compensation Law § 123; 12 NYCRR 300.5 [b] [2]). In light of this continuing jurisdiction, the Board acted within its authority in denying the employer's request to rehear or reopen the claim based upon its finding that, pursuant to the 2017 amendment, claimant was not required to demonstrate an attachment to the labor market, notwithstanding the parties preamendment stipulation (see Matter of Gibson v Carrier Corp., 307 AD2d 616, 618 [2003]).
We also reject the employer's contention that a retroactive application of the 2017 amendment is in violation of the Contract Clause of the US Constitution. "The Contract Clause of the US Constitution prohibits states from enacting laws impairing the Obligation of Contracts" (American Economy Ins. Co. v State of New York, 30 NY3d 136, 149 [2017] [internal quotation marks, brackets and citation omitted], cert denied ___ US ___, 138 S Ct 2601 [2018]). "'The threshold inquiry is whether the state law has, in fact, operated as a substantial impairment of a contractual relationship'" (id., quoting Energy Reserves Group, Inc. v Kansas Power & Light Co., 459 US 400, 411 [1983]; see Schantz v O'Sullivan, 11 AD3d 22, 25 [2004], lv dismissed 3 NY3d 767 [2004]). "This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial" (General Motors Corp. v Romein, 503 US 181, 186 [1992]; see American Economy Ins. Co. v State of New York, 30 NY3d at 150).
The Board has recognized that "a stipulation is essentially a contract and may be enforced as such" as between the parties (Employer: Able Health Care Servs., 2019 WL 4735669, *3, 2019 NY Wrk Comp LEXIS 11175, *6 [WCB No. G078 8262, Sept. 23, 2019; see Employer: A Valletta Contr. LLC, 2019 WL 328267, *2, 2019 NY Wrk Comp LEXIS 00618, *4 [WCB No. G165 2677, Jan. 18, 2019]; Employer: MTA Long Island Bus, 2004 WL 64457, *2, 2004 NY Wrk Comp LEXIS 06494, *3 [WCB No. 2000 7842, Jan. 7, 2004]). Here, the parties entered into their stipulation at a hearing, and the terms were approved by the WCLJ and incorporated into his decision. The terms of the stipulation became binding on the parties at that time (see 12 NYCRR 300.5 [b] [2]) and, while it established a contractual relationship between the parties, the stipulation remained subject to the continuing jurisdiction of the Board to make changes that the Board deemed just (see Workers' Compensation Law § 123).
We recognize that a retroactive application of the amendment relieved claimant of her obligation to submit job search results every 60 days, but we do not find that change to be substantial.[FN1] Claimant does not dispute that, prior to the 2017 amendment, she was required to demonstrate an ongoing attachment to the labor market regardless of the stipulation (see Matter of O'Donnell v Erie County, 2020 NY Slip Op 02095 at *3-4; Matter of Zamora v New York Neurologic Assoc., 19 NY3d 186, 191-192 [2012]; Matter of Rosario v AIG, 96 AD3d 1111, 1112 [2012]; Matter of Bobbitt v Peter Charbonneau Constr., 85 AD3d 1351, 1351 [2011]; Matter of Peck v James Sq. Nursing Home, 34 AD3d 1033, 1034 [2006]). The stipulation merely addressed the temporal format for claimant to follow. Inasmuch as the workers' compensation field is heavily regulated and claimant's obligation to demonstrate an ongoing attachment to the labor market did not arise from a contractual obligation, we cannot say that a retroactive application of the 2017 amendment substantially impaired the contractual relationship between the parties (see Methodist Hosp. of Brooklyn v State Ins. Fund, 102 AD2d at 382).
Egan Jr., J.P., Devine, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: The remaining terms of the stipulation, including the extent of claimant's disability and the amount and duration of her benefits, are not changed by the 2017 amendment and remain in effect.